UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL LEE DIXON,<br><br>     Petitioner,<br><br>vs.<br><br>KEITH YORDY,<br><br>     Respondent. | Case No. 1:14-cv-00551-REB<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

At issue in this federal habeas corpus action is Respondent's Motion for Summary Dismissal. The Motion is now fully briefed and ripe for a decision. (Dkt. 13, 15.) All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 8.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having completed a careful review of the record, and having considered the arguments of the parties, the Court enters the following Order.

## BACKGROUND

In 2006, Dixon was convicted of lewd conduct with a minor under sixteen, first degree kidnapping, misdemeanor possession of drug paraphernalia, and misdemeanor malicious injury to property, after a jury trial in the First Judicial District Court in Kootenai County, Idaho. The incident occurred at a Coeur d'Alene beach park. Petitioner

was accused of grabbing and restraining a twelve-year-old girl, placing her on his lap,

and touching her vagina. Petitioner has always contended that he is actually innocent.

Petitioner's judgment of conviction was entered on July 19, 2006. After his

conviction, Petitioner filed a direct appeal and three state post-conviction actions, none of

which provided relief on his convictions or sentences.

Petitioner brings the following claims in this action. Claim 1 is a Sixth Amendment

ineffective assistance of trial counsel claim, consisting of the following subparts:

A. failure to file a notice of appeal, despite Petitioner's specific request;[1]

B. failure to call witnesses including: (1) Megan Griffitts, (2) the owner of
   Funtastic Foods, (3), Reuben Rodriguez, (4) Russell Giles, and (5) six
   employees of Diamond Parking and the City Park (Brian, Curtis, Jake,
   Heather, Tag, and Marie);

C. (i) failure to request a second evidentiary hearing after the first one was
   cancelled in February 2006, and (ii) failure to have Petitioner's clothing and
   telephone records admitted as evidence at trial;

D. failure to use a recorded interview to impeach witness Karisma Cronkite;

E. failure to poll the jury after the guilty verdict;

F. failure to inform Petitioner of his right to file an appeal;

G. wrongly informing Petitioner that he had no Fifth Amendment right to refuse
   to take a psychosexual evaluation;

H. failure to file a motion for change of venue;

I. failure to object to the prosecutor vouching for the credibility of two witnesses
   during closing argument;

J. failure to file a post-conviction appeal (post-conviction counsel);

---

[1]     Claim 1(A), (F), and (J) are summarily denied as having no factual and/or legal basis: Petitioner *did* file a timely notice of appeal in the direct appeal action, which was pursued to completion. Where Petitioner is referring to his post-conviction counsel's failure to file a notice of appeal in the post-conviction action, the claim has no legal basis: errors in post-conviction review are not cognizable federal habeas corpus claims. In any event, Petitioner's post-conviction appeal rights were restored, and he completed an appeal.

**MEMORANDUM DECISION AND ORDER - 2**

K. (i) failure to have Petitioner's clothing examined for DNA evidence; (ii) failure to have his clothing submitted to the jury, so they could see the clothing did not fit the description of the witnesses (duplicative of (C)(ii) above);

L. failure to request a change of location from the jail building to a regular court room;

M. failure to have his medical records and arm examined by an expert to show that he had an injury so severe that it was a factual impossibility for him to have committed the crime; and

N. failure to spend adequate time to effectively represent Petitioner, including failure to prepare for trial, and failure to prepare Petitioner for his testimony at trial.

Claim 2 is an allegation that Petitioner was denied the right to a fair trial when the trial court refused to allow Petitioner to call witnesses during trial. Claim 3 is that he was denied the right to a fair trial when the prosecutor refused to give Petitioner exculpatory evidence. Claim 4 is the denial of the right to a fair trial under a cumulative error theory.

## DISCUSSION OF RESPONDENT'S
## STATUTE OF LIMITATIONS DEFENSE

### 1. Standard of Law Governing Dismissal on Statute of Limitation Grounds

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[2] 28 U.S.C. § 2244(d)(1)(A). One year means 366 days, for example*, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period is marked as follows, depending on how far a petitioner pursues his claim:

| **Action Taken** | **Finality Occurs** |
| --- | --- |
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is | Date of decision |

---

[2]      Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D).

| granted, and the United States Supreme Court issues a decision | |

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*, 132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"). However, the United States Supreme Court has established an exception for cases in which the state court grants the petitioner the right to file an out-of-time direct appeal; in that case, the federal habeas statute of limitations begins to run again from the new date of finality. *Jimenez v. Quarterman*, 555 U.S. 113, 116 (2009).

AEDPA also contains a tolling provision that stops or suspends the one-year limitations period from running during the time in "which a properly filed application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). The federal statute of limitations is not tolled between the date of finality on direct appeal and the date the first collateral challenge is filed, because nothing is "pending" during that time. *Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007).

To warrant tolling, the collateral relief application must be "properly filed," meaning that it conforms to state rules governing conditions to filing, including

**MEMORANDUM DECISION AND ORDER - 5**

timeliness. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). A state collateral relief application is considered "pending" under § 2244(d)(2) until "the application has achieved final resolution through the State's post-conviction procedures." *Carey v. Saffold*, 536 U.S. 214, 220 (2002). Whether an application remains "pending" under § 2244(d)(2) depends on the state's interpretation of finality. *See id. at* 223 ("Ordinarily, for purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions, rather than the particular name that it bears"); *White v. Klitzkie*, 281 F.3d 920, 924 n.4 (9th Cir. 2002) (it is the state appellate court decision, not the mandate, that signals conclusion of review for § 2244(d)(2) purposes, unless (as in Idaho and California) the state has a rule that extends the time when the decision of the state appellate court becomes final).

In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 984 P.2d 128, 129 (Idaho Ct. App. 1999), and so, for federal purposes, a collateral relief application is deemed "pending" through the date of the remittitur. *See Jefferson v. Budge*, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005). "Pending" does not include the time period for filing a petition for writ of certiorari before the United States Supreme Court to challenge denial of a collateral review petition. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007). Finally, each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

**2. Facts Important to Timeliness Issue**

After conviction, Petitioner filed a direct appeal challenging his sentence, and the Idaho Court of Appeals affirmed. The Idaho Supreme Court denied Petitioner's petition for review on August 8, 2007.

On July 28, 2008, Petitioner filed a first state post-conviction petition. The judgment denying relief in that matter was entered on April 12, 2011. Petitioner's attorney did not file a notice of appeal from the order of dismissal, but instead filed a Rule 60(b) motion in that action many months later, on October 5, 2011. (State's Lodging G-10.) For purposes of the federal habeas statute of limitations, this late filing of the Rule 60(b) motion resulted in a six-month time frame in which no collateral matter was pending in state court. The Rule 60(b) motion was denied, and Petitioner filed a timely appeal from denial of the motion.

Petitioner's counsel's failure to file a notice of appeal in the post-conviction action did not go unnoticed. During the 42-day appeal time (set to end May 24, 2011), Petitioner himself determined that a notice of appeal should be filed, and so on May 13, 2011, he tried to obtain help from prison officials to prepare the filing.

Petitioner's concern form was apparently misrouted to the chaplain; as a result, Petitioner received no help from the prison during the time to appeal. After the appeal deadline passed, Petitioner found another inmate to help him and later filed a pro se notice of appeal that was determined to be untimely. The Idaho Supreme Court notified Petitioner that his post-conviction appeal was going to be dismissed, and Petitioner filed a response, blaming his counsel for the untimely notice. The Idaho Supreme Court

**MEMORANDUM DECISION AND ORDER - 7**

dismissed the post-conviction appeal on September 8, 2011, and remittitur was entered on November 3, 2011. (See State's Lodgings C-1 to D-4.)

Meanwhile, the Rule 60(b) motion was denied, and counsel filed a notice of appeal. During pendency of the Rule 60(b) appeal arising from the first post-conviction matter, Petitioner filed a successive post-conviction action on March 27, 2012, wherein he successfully obtained a stipulated judgment requiring re-entry of the judgment in his first post-conviction action, effectively reinstating his appeal rights in that collateral action, on November 27, 2012. (State's Lodgings F-1 to F-8.) Petitioner then filed an appeal, which was consolidated with the appeal of his 60(b) motion. He obtained no relief in that action, and his state court appeals concluded with denial of the petition for review and issuance of the remittitur on December 12, 2014. (State's Lodgings G-1 to G-19.)

### 3. Discussion of Timeliness

For purposes of this timeliness discussion, the Court repeats those historical facts that relate to the calculation of Petitioner's federal statute of limitations. Petitioner's direct appeal concluded in the Idaho Supreme Court on August 8, 2007. He did not file a petition for writ of certiorari with the United States Supreme Court; thus his conviction became final at end of the 90-day period, on November 6, 2007.

The federal statute of limitations began on November 6, 2007, the date of finality. It continued running for 265 days, until Petitioner filed his first post-conviction petition on July 28, 2008.

**MEMORANDUM DECISION AND ORDER - 8**

The statute of limitations was tolled from July 28, 2008, through at least the date Petitioner's post-conviction action was denied by order of the state district court, on April 12, 2011. (State's Lodging C-1, p. 103.) Respondent argues that because the appeal in that action was determined to be untimely filed, no statutory tolling during the pendency of the appeal was warranted. "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that the filing of the notice of appeal is timely under state law*." *Evans v. Chavis*, 546 U.S. 189, 191 (2006) (emphasis added). That is, when an appeal is untimely, *none* of the *appellate filings* will statutorily toll the federal statute of limitations.

Petitioner argues that, because his appeal rights in the first post-conviction action were later *reinstated*, an additional statutory tolling period should be afforded him, which would bridge the gap between the district court's decision in the first post-conviction action and the filing of the Rule 60(b) motion, after which Plaintiff's state court action was continuously pending until December 12, 2014, the same day he filed his federal Petition for Writ of Habeas Corpus (mailbox rule date).

### A.  Orders Issued in Petitioner's Case by the Idaho Courts

The Court first reviews the orders filed in Petitioner's state post-conviction matter. The order granting post-conviction relief to Petitioner stated, in pertinent part: "IT IS FURTHER ORDERED that the Court shall enter an Amended Final Judgment denying Petitioner Daniel Lee Dixon's original and amended petitions for Post-Conviction Relief

**MEMORANDUM DECISION AND ORDER - 9**

in *Daniel Lee Dixon v. State of Idaho*, CV-2012-5912 (Kootenai County), thereby

restoring Dixon's opportunity to timely appeal that Judgment." (State's Lodging F-7.)

The "Order for Reentry of Final Judgment Denying Post Conviction Relief" provided, in

pertinent part:

> [T]he Court having found that the parties have stipulated to reentry
> of the Final Judgment entered herein on April 12, 2011 as the relief to be
> granted to Petitioner in his subsequent Petition for Post Conviction Relief
> filed in the matter of *Daniel Lee Dixon v. State of Idaho*, CV-2012-2390
> (Kootenai County), thereby restoring Petitioner's appellate rights in this
> matter; and, the Court finding good cause exists for following the
> stipulation, now, therefore:
>
> IT IS HEREBY ORDERED that the Final Judgment entered herein
> on April 12, 2011 is hereby reentered.

(State's Lodging E-1, pp. 55-56.)

### B.  Other Circuits' Rulings on "Pendency" between 2000 and 2009

Between 2000 and 2009, most circuit courts determined that the *later* granting of

leave to file an appeal out of time could not artificially erase an *earlier* time period during

which nothing was pending before a state court. *See, e.g., Gibson v. Kingler*, 232 F.3d

799, 804–808 (10th Cir. 2000). In other words, pending meant *actually* pending.

### C.  Ninth Circuit's 2000 Ruling on "Pendency"

The Ninth Circuit Court of Appeals did not have occasion to address the question

of out-of-time appeals as early as some other circuits, but it did tackle the issue of

"pendency" in a different context in *Saffold v. Newland*, 250 F.3d 1262 (9th Cir. 2000),

*vacated sub nom. Carey v. Saffold*, 536 U.S. 214 (2002). In *Saffold v. Newland*, the Ninth

Circuit decided that an application for state collateral review was "pending" in the
California state court system during the interval between a lower court's final
determination and the filing of a further original state habeas petition in the appellate
court challenging the same claims (which is the unique California "appeal" system).

### D. Criticism of Ninth Circuit Holding and Supreme Court's 2002 Clarification of "Pending"

The Ninth Circuit's analysis of "pending" in *Safford v. Newland* was criticized by
the Seventh Circuit Court of Appeals when it analyzed the question of whether an out-of-
time notice of appeal could retroactively render an action "pending" in *Fernandez v.
Sternes*, 227 F.3d 977 (7th Cir. 2000). In *Fernandez*, the Seventh Circuit court opined
that the Ninth Circuit analysis "implements a make-believe approach, under which
petitions were *continuously* pending whenever a state court allows an untimely filing";
the Seventh Circuit attributed to the result "a Cheshire-cat like quality, both there and not
there at the same time." *Id*. at 980.

In the Seventh Circuit's case, Mr. Fernandez's late notice of appeal was allowed
by the Supreme Court of Illinois, rendering it "properly filed"; however, the original
judgment date was never vacated and replaced by a new date, as in Petitioner's case. The
Seventh Circuit decided that only the time "between the filing of the request to excuse the
default and the state court's decision on the merits" was statutorily tolled. 227 F.3d at
979-80.

*Fernandez*'s conclusion that "revival does not make a case 'pending' in the
interim," 227 F.3d at 981, still represents a universal conclusion across all circuits in

**MEMORANDUM DECISION AND ORDER - 11**

circumstances where a state court hears out-of-time claims but does not actually re-enter a new judgment that has retroactive effect. However, in circumstances where a new judgment is actually re-entered, this universal conclusion of the lower federal courts is now outmoded, as the Court will explain.

*Fernandez*'s criticism of the Ninth Circuit was rejected by the United States Supreme Court in its review of *Saffold*. There, the Supreme Court approved of the Ninth Circuit's interpretation of tolling under the California legal scheme—that a case can be deemed "pending" retroactively *if and when* a California petitioner decides to file a new action in a higher court that challenges the decision of the lower court on the same claims, so long as the petitioner does not unreasonably delay the higher court filing. *Carey v. Saffold*, 536 U.S. at 221-25. *Nothing*, however, is ever *actually* pending in the interim—supporting Petitioner's position here that whether an action is "pending" can be legally altered by a later filing.[3]

In fact, the *Carey v. Saffold* opinion determined that the same holds true for states that have determinate deadlines for the filing of a notice of appeal—if a petitioner files a notice of appeal after his post-conviction case is dismissed, the time between the judgment of dismissal and the notice of appeal is tolled because the collateral review case is considered still "pending"; if he does not file a notice of appeal, the additional time for filing a notice of appeal is not counted toward tolling, and the case is considered no

---

[3]      The Ninth Circuit's *Saffold* decision was vacated and remanded only for a determination of whether the amount of time between the filings was reasonable. *Carey v. Saffold*, 536 U.S. at 227.

longer "pending." 536 U.S. at 219-21. As to collateral review matters in any state, then, the status of post-judgment pendency cannot be achieved until the later act of properly filing a notice of appeal is completed.

### E.  Supreme Court's 2005 Ruling on Timeliness as a Component of Proper Filing

In 2005, the Supreme Court further clarified § 2244(d)(2), the statutory subsection at issue here. In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), addressing the question it had reserved in *Artuz v. Bennett*, 531 U.S. 4 (2000), the Supreme Court held that "[w]hen a postconviction petition is untimely under state law, "that [is] the end of the matter" for purposes of § 2244(d)(2)." 544 U.S. at 414 (quoting *Carey v. Saffold*, 536 U.S. at 226.) *Pace* is helpful to Petitioner's position because it cements the proposition that state courts are free to determine what is timely and to create procedural exceptions to their timeliness rules, which then govern the federal statutory tolling inquiry.

### F.  Supreme Court's 2009 Clarification of Out-of-Time Direct Appeal Issue

Four years later, the United States Supreme Court clarified § 2244(d)(1)(A), the subsection governing finality of direct appeal, which governs when the habeas statute of limitations begins to run, a slightly different but related issue. In *Jimenez v. Quarterman*, 555 U.S. 113 (2009), the United States Supreme Court held that, if a state court re-opens the direct appeal time period, then the federal habeas corpus statute does not begin to run until that date, because the re-opening re-sets the date of "finality." *Id*. at 686.

**MEMORANDUM DECISION AND ORDER - 13**

*Jimenez* carefully examined the Texas Court of Criminal Appeals' decision in the petitioner's state court action, which specifically provided:

> "[Petitioner] is entitled to an out-of-time appeal in cause number CR–91–0528–B in the 119th Judicial District Court of Tom Green County. [Petitioner] is ordered returned to that point in time at which he may give written notice of appeal so that he may then, with the aid of counsel, obtain a meaningful appeal. For purposes of the Texas Rules of Appellate Procedure, all time limits shall be calculated as if the sentence had been imposed on the date that the mandate of this Court issues." *Ex parte Jimenez*, No. 74,433 (per curiam), App. 26, 27.

555 U.S. at 116. The United States Supreme Court also quoted with approval a similar Texas Court of Criminal Appeals case opining that an "order 'granting an out-of-time appeal *restores the pendency* of the direct appeal,'" 555 U.S. at 120 (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (emphasis added)). In other words, an order revoking finality can restore the pendency of a case under state law, meaning that a case that was *not* pending after a first final order can be transformed into a case that *was* pending—not unlike the Supreme Court's conclusion in *Carey v. Saffold* about §2254(d)'s use of the term "pending."

### G.  Post-Jimenez Questions and Answers from the Lower Federal Courts

Petitioner's case concerns the convergence or divergence of *Carey v. Safford* and *Jimenez*. As noted above, *Jimenez* focused on finality of judgment, which starts the statute of limitations running, as defined in § 2244(d)(1)(A), but Petitioner's question is about "pendency," which keeps the statute tolled, as defined in § 2244(d)(2). In particular, can the pendency of a post-conviction case be retroactively reinstated by a

**MEMORANDUM DECISION AND ORDER - 14**

state court order restoring post-conviction appeal rights, for purposes of the federal statute of limitations calculation?

Several courts have wrestled with similar issues since *Jimenez* was issued. In *Drew v. McEachern*, 620 F.3d 16 (1st Cir. 2010), the First Circuit refused to construe the petitioner's post-conviction action as "pending" for a 12-year period of time between his first and second collateral review matters. In the second post-conviction action, the Massachusetts appellate court did not disturb the finality of the original judgment, as in *Jimenez*, but elected to hear an ineffective assistance claim presented as a new motion "rather than resurrect an old appeal that court appointed counsel failed to prosecute." *Id*. at 18-19. Based on the Massachusetts court's action and the fact that *Jimenez* addressed only the term "final" in § 2244(d)(1)(A), not the term "pending" in § 2244(d)(2), the First Circuit did not extend *Jimenez* to the petitioner's circumstance.

In *Randle v. Crawford*, 604 F.3d 1047 (9th Cir. 2009), the Ninth Circuit distinguished Mr. Randle's case from *Jimenez* on grounds that the Nevada Supreme Court did not restore the petitioner's direct appeal because it had no jurisdiction to do so. Rather, he was allowed instead to present the issues in his post-conviction action. Similarly, in *Lindbeck v. Glebe*, 2013 WL 1944478 (W.D. Wa. 2013), the court decided that *Jimenez* did not apply where the state court granted the petitioner permission to file an out-of-time collateral relief petition where he could present the same arguments he could have presented on direct appeal, but where the state court did not disturb the original date of finality.

**MEMORANDUM DECISION AND ORDER - 15**

In *De Jesus v. Acevedo*, 567 F.3d 941 (7th Cir. 2009), a petitioner convicted of murder in 1991, in Illinois, contended that a federal petition filed in 2007 was timely because a state court had accepted, and rejected on the merits, a delayed collateral petition he filed in 2000. *Id*. at 942. The Illinois appellate court had excused the delay on grounds that de Jesus had "received incorrect advice in 1991 [when] a state judge told him to seek review in the Supreme Court of Illinois rather than the Appellate Court[]." *Id*. at 943.

On these facts, however, the Seventh Circuit ruled that "[a] state's decision to accept an untimely filing does not justify back-dating that filing," distinguishing *Jimenez* on grounds that (1) Mr. Jimenez "obtained collateral relief from state court, leading to a new final decision, while de Jesus did not obtain any relief from state court, so the date of final decision on direct review in his case remains 1991"; and (2) *Jimenez* concerned interpretation of § 2244(d)(1)(A), and de Jesus offered no reason the holding should be extended to § 2244(d)(2). *Id*. at 943-44. The holding seems to rest on the distinction that Mr. Jimenez's judgment was *re-entered* to create a new finality date, while Mr. de Jesus was simply permitted to assert his direct appeal claims in his collateral relief application, with no change in his original judgment. Therefore, the result in *De Jesus* is not contrary to Petitioner's position herein.

This Court concludes that there is no substantial difference between (a) restoring pendency of a direct appeal by *changing the finality date* from which the statute of limitations begins running; and (b) restoring pendency of a state collateral matter *by changing the finality date* of that action where state law permits retroactive repair of an

untimely notice of appeal. In *Carey v. Saffold*, the United States Supreme Court defined

"pending" as "in continuance," "not yet decided," "through the period of continuance …

of," and "until the … completion of." 536 U.S. at 219-20. "In other words," the Supreme

Court explained, the matter "remains pending," by definition, "until the application has

achieved final resolution through the State's post-conviction procedures." *Id*. at 220.

Hence, when the state court alters the "pending" status of a state post-conviction

case so that the petitioner can achieve final resolution in the state court system, the

federal court is bound to recognize that "pending" status for purposes of § 2244(d)(2)

because reinstatement of an appeal is a state-sanctioned act that restores the procedural

propriety of the earlier postconviction action. *See Pace* and *Carey v. Saffold*, *supra*,

(determination of "properly filed" and "timeliness" issues are matters for the state courts

exclusively to decide). Importantly, this interpretation maintains fidelity to "AEDPA's

goal of promoting 'comity, finality, and federalism' by giving state courts 'the first

opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the

first instance.'" *Jimenez*, 555 U.S. at 121 (quoting *Carey v. Saffold*, 536 U.S. at 220).

Further, this interpretation will not spawn abuse, as the restoration of appeal rights is a

distinct situation and a fairly rare remedy.[4]

---

[4]       *Cf. Randle v. Crawford*, 604 F.3d 1047, 1054 (9th Cir. 2009), where the Court noted that if statutory tolling
were to be applied to *dismissals* of untimely notices of appeal, state prisoners might try to extend or manipulate the
deadline for federal habeas review by filing additional petitions in state court, thus defeating the goal of the federal
statute of limitations to prevent undue delays in federal habeas review" (citation omitted).

**MEMORANDUM DECISION AND ORDER - 17**

### H. Conclusion for Petitioner's Circumstance

The Court interprets the Idaho district court's orders set forth above as reinstating the pendency of an action by altering the finality date, as in *Jimenez*. The Court distinguishes those cases where, under the laws of the states at issue, a new finality date was not awarded, but rather only an opportunity to bring the otherwise-barred claims in a new collateral challenge. *Fernandez* and cases rejecting retroactive restoration of pendency have been overruled by implication by *Jimenez* and *Carey v. Saffold*; in fact, the viewpoint in the dissenting opinion in *Carey v. Saffold* that was rejected by the Supreme Court majority tracks the reasoning of *Fernandez*:

> Under today's ruling, the federal court would be required to rule that the state petition, which was not pending before, had retroactively become so, and the prisoner's new federal application was timely. This is not a sensible way of determining when an application is "pending" under the federal tolling provision. Whether an application is pending at any given moment should be susceptible of a yes or no answer. On the Court's theory the answer will often be "impossible to tell," because it depends not on whether an application is under submission in a particular court but upon events that may occur at some later time.

*Carey v. Saffold*, 536 U.S. at 234–35 (Kennedy, J., dissenting).

In summary, when Petitioner's new date of finality was entered, the pendency of the first post-conviction action was restored, the actions were merged into one continuous action that had not reached completion, and the new notice of appeal became "timely under state law," satisfying *Chavis,* 546 U.S. at 190, and being consistent with *Jimenez* and *Carey v. Saffold*.[5] Therefore, the Court concludes that the first post-conviction matter

---

[5]     The Court also rejects Respondent's reliance on *Tunstall v. Wengler*, 2011 WL 2517015 (D. Idaho June 22, 2011), because there is no mention in that case that the state court vacated and entered a

was pending from the date it was filed, on July 28, 2008, until December 12, 2014, when the remittitur was issued in the successive action (State's Lodging G-19), which was the same date Petitioner filed his federal petition under the mailbox rule. Therefore, Petitioner's claims are timely.

## DISCUSSION OF RESPONDENT'S PROCEDURAL DEFAULT DEFENSE

Respondent alternatively argues that all of Petitioner's habeas corpus claims are procedurally defaulted, with the exception of Claims 1(L) and 1(M).

### 1. Standard of Law

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state (like Idaho) with the possibility of discretionary review in the highest appellate court, the petitioner must have presented all of his federal claims in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires description of both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

---

new judgment to create the retroactive pendency that occurred in Petitioner's case. *Ferguson v. Palmateer*, 321 F.3d 820 (9th Cir. 2003), also does not apply to this case, because the issue centered on the fact that Mr. Ferguson filed his petition for state post-conviction relief within Oregon's two-year statute of limitations, but beyond AEDPA's one-year statute of limitations; there was no state court action restoring the pendency of a lost state court appeal opportunity in that case.

**MEMORANDUM DECISION AND ORDER - 19**

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it under the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; or (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## 2. Discussion

On direct appeal, Petitioner brought only a state law claim that his sentences were excessive. (State's Lodgings B-1, B-3.) This claim does not correspond to any claim raised in the federal Petition.

In the consolidated appeal (of the denial of his Rule 60(b) motion and his post-conviction petition), including the petition for review to the Idaho Supreme Court filed by counsel, Petitioner presented two claims: (1) "ineffective assistance of counsel due to counsel's failure to object to the jury trial being held in the county jail"; and (2) "ineffective assistance of counsel due to counsel's failure to present physical evidence and/or expert testimony regarding an injury to Dixon's arm." (State's Lodging G-17.) These claims correspond to Claims 1(L) and 1(M) of Petitioner's federal habeas corpus

petition.  Accordingly, Petitioner can proceed to the merits of those claims because they were properly exhausted in the state court system.

### 3. Cause and Prejudice

Petitioner cannot proceed on any other claims without a showing of cause and prejudice or a miscarriage of justice. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Murray v. Carrier*, 477 U.S. 478, 488 (1986)

Ordinarily, to show "cause" for a procedural default, petitioner must prove that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Id.* at 488. To show "prejudice," a petitioner must show "not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An attorney's errors that rise to the level of a violation of the Sixth Amendment's right to effective assistance of counsel may, under certain circumstances, serve as cause to excuse the procedural default of other claims. *Murray*, 477 U.S. 488. However, an allegation of ineffective assistance of counsel will excuse the default of other claims *only* if the ineffective assistance of counsel claim itself is not procedurally defaulted or, if

defaulted, Petitioner can show cause and prejudice for the default. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000). In other words, before a federal court can consider ineffective assistance of counsel as cause to excuse the default of underlying habeas claims, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court.

As to the related but nonetheless different topic of alleged errors of counsel made on post-conviction review that cause the default of other claims, the general rule on procedural default is that any errors of a defense attorney during a post-conviction action *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. 752. This barrier stems from the rule that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

There is, however, a limited exception to the *Coleman* rule found in *Martinez v. Ryan*, 132 S. Ct. 1309, 1319 (2012). In *Martinez*, the court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. The *Martinez* Court created the limited exception because "as an equitable matter... the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*. at 1318.

**MEMORANDUM DECISION AND ORDER - 22**

The *Martinez v. Ryan* exception permits the district court to hear procedurally defaulted claims of ineffective assistance of trial counsel, *id*. at 1320, and ineffective assistance of direct appeal counsel. *See Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013). The exception, however, has not been extended to other types of claims. *See Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (*Martinez* not applicable to a defaulted *Brady* claim).  Petitioner asserts that *Martinez* applies to his case because his post-conviction counsel was determined to be ineffective for failing to file a notice of appeal. However, because Petitioner's appeal rights were reinstated, and Petitioner was permitted to appeal any claims he desired, his argument fails.

In addition, *Martinez* does not apply to post-conviction appeals, only original post-conviction actions. Therefore, any claims that *were* included in the original petition but were not included in the post-conviction appeal are defaulted as well -- likely because of appellate counsel's strategic decision to not include them in the appeal, rather than any fault of the attorney who handled the post-conviction matter in the state district court.

As to any claims that were *not* brought in the original post-conviction action, Petitioner must show that the ineffectiveness of his attorney caused the default of any ineffective assistance of trial counsel claims. Ineffectiveness mean that post-conviction counsel performed deficiently, and the omissions were not simply the result of the strategic selection of issues for post-conviction review. *See Strickland v. Washington*, 466 U.S. 668 (1984).

In addition, Petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Martinez*,

132 S. Ct. at 1318-19. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id*.; *see Strickland*, 466 U.S. at 695-96.

In this case, the potential subclaims to which *Martinez* might apply regarding Claim 1 (ineffective assistance of trial counsel) are as follows:[6]

B.  failure to call witnesses including: (1) Megan Griffitts, (2) the owner of Funtastic Foods, (3), Reuben Rodriguez, (4) Russell Giles, and (5) six employees of Diamond Parking and the City Park (Brian, Curtis, Jake, Heather, Tag, and Marie);

C.  (i) failure to request a second evidentiary hearing after the first one was cancelled in February 2006, and (ii) failure to have Petitioner's clothing and telephone records admitted as evidence at trial;

D.  failure to use a recorded interview to impeach witness Karisma Cronkite;

E.  failure to poll the jury after the guilty verdict;

F.  wrongly informing Petitioner that he had no Fifth Amendment right to refuse to take a psychosexual evaluation;

G.  failure to file a motion for change of venue;

I.  failure to object to the prosecutor vouching for the credibility of two witnesses during closing argument;

K.  (i) failure to have Petitioner's clothing examined for DNA evidence; (ii) failure to have his clothing submitted to the jury, so they could see the clothing did not fit the description of the witnesses.

N.  failure to spend adequate time to effectively represent Petitioner, including failure to prepare for trial, and failure to prepare Petitioner for his testimony at trial.

---

[6]     *Martinez* applies only to claims of trial or direct appeal counsel claims; therefore, Claims 2-4 are ineligible for this exception.

**MEMORANDUM DECISION AND ORDER - 24**

Petitioner has made no argument that any of these claims are excused under the *Martinez* standard, set forth above. Should he desire to do so, he may file a motion with supporting evidence within 60 days after entry of this Order.

### 4.  Miscarriage of Justice

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim *if* he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496.

A compelling showing of actual innocence can satisfy the fundamental miscarriage of justice exception to procedural default, allowing a court to review Petitioner's otherwise defaulted claims on their merits. *See Schlup v. Delo*, 513 U.S. 298, 315, 324 (1995).  There remains the caveat, however, that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 64, 623 (1998).

To establish such a claim, a petitioner must come forward with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The evidence supporting the actual innocence claim must be "newly presented" evidence of actual innocence, meaning that "it was not introduced to the jury at trial"; it

**MEMORANDUM DECISION AND ORDER - 25**

need not be "newly discovered," meaning that it could have been available to the defendant during his trial, though it was not presented to the jury. *Griffin v. Johnson*, 350 F.3d 956, 962–63 (9th Cir. 2013).

The petitioner bears the burden of demonstrating that "in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 539 (2006). The standard is demanding and permits review only in the "extraordinary" case. *Schlup*, 513 U.S. at 327 (citation omitted).

A habeas proceeding is not a proper forum in which to re-litigate an entire case that has already been tried. Instead, "[w]hen confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict." *House v. Bell*, 547 U.S. at 539. A persuasive claim of actual innocence must be based on new evidence, not presented to the jury, that is so compelling to leave only the conclusion that it is now probable that no rational juror would vote to convict the defendant. *See id.* at 538-39.

Petitioner's claim of actual innocence here, however, is weak, at best. Karisma Cronkite's fiancé, Kelvin Triplett, testified that he followed Petitioner from the time Petitioner left the victim until Petitioner tried to beckon two other girls to come over to him in a different part of the park. When Petitioner gestured to the two other girls at the beach to come over to him, Triplett tried to signal to the girls not to approach Petitioner.

When a police officer arrived at the beach, Triplett and the victim identified Petitioner as the man who had grabbed the victim. Tiffany Longfellow, a YMCA child

**MEMORANDUM DECISION AND ORDER - 26**

care coordinator, also identified Petitioner as the man who had beckoned the two girls who were in her care.

At or near the time of the incident, all of the persons who identified Petitioner as the perpetrator had described his physical characteristics quite well. Some witnesses had difficulty identifying him *in the courtroom*, because, according to Officer Todd Carroll, Petitioner had lost about 50 pounds. (State's Lodging A-7, p. 208.) Officer Rory Johnson testified that Petitioner "looks quite a bit slimmer at trial than he did at the time of the incident." (State's Lodging A-7, p. 269.) This difficulty does not show that Petitioner was not the perpetrator.

Several witnesses could not recall the exact clothing Petitioner was wearing at the time. Petitioner tries to make a larger issue of the clothing than the record indicates, alleging that *witnesses* must have originally told police Petitioner was wearing black shorts and a white t-shirt—something he has extrapolated from the police report that shows "shorts, t shirt black/white." The police officer testified that he didn't identify the color of the shorts on the report, and that, because he separated the two pieces of clothing with a comma, it meant that the shirt was black and white, or it could have been dark blue. (State's Lodging A-7, p. 271). Karisma Cronkite and the victim's mother both said the shorts were khaki and the shirt was blue. (*Id.*, pp. 76, 111.) Rachel Arp, one of the other two girls, said Petitioner was wearing shorts and a white t-shirt. (*Id.*, p. 165.)

Another piece of inculpatory evidence came in the testimony of Rachelle Van Slate, a bartender in the area, who testified that Petitioner came into the bar earlier in the day and "asked us if we saw the 12-year-olds downtown in their bikinis and how good

they looked." (State's Lodging A-7, p. 280.) As Petitioner was leaving, he said, "I'm going to go get myself a 12-year-old." (*Id*., p. 284.) This testimony showed a plan, and that Petitioner attempted to carry out that plan not once, but twice, on the beach a short time later.

Petitioner alleges that his phone record shows he was using the phone at the time of the alleged incident and therefore could not have committed the crime. However, his phone record is more harmful than helpful. It shows the same thing the witnesses testified to, including Officer Todd Carroll—that Petitioner appeared to be merely pretending to be on the phone, because he was engaging in odd, short, nonsensical phone calls. (Dkt. 1-2, pp. 2-3.) There is a 20-minute no-call stretch of time, between 1:17 and 1:37 p.m., in which Petitioner could have committed the crime.

Petitioner believes the alleged incident took place between 1:50 and 2:00, and the log shows that he was on his phone for continuous short stretches during that 10-minute interval. Petitioner's belief is based upon the police report of Officer Carroll, estimating that the incident occurred from 13:48 to 13:50, because he arrived at the scene about 1:50. (State's Lodging A-1, p. 16; A-7, pp. 201-06.) However, between the time the victim escaped from the perpetrator and the officer arrived at 1:50, all of the following occurred: Petitioner had tried to entice the other two girls (at least three times) (State's Lodging A-7, p. 172); Kelvin Triplett had tried to intervene with the other two girls and then had run back to the victim and her mother; and Tiffany Longfellow had questioned the two girls, fielded the three reports from them, and gotten up to confront Petitioner.

Karisma Cronkite estimated it was about 1:45 or 2:00 in the afternoon. (*Id*., p. 96.) The prosecutor estimated the time to be about 1:30 or 1:40 when examining the victim's mother, and the victim's mother did not correct that estimate of the time. (*Id*., p. 73.) In short, the totality of the evidence shows (1) that Petitioner could have committed the crime between 1:17 and 1:37; (2) that more than two minutes elapsed between the time Petitioner grabbed the victim and tried three separate times to entice the other two girls; and (3) that no one definitively knew what time the incident occurred. Officer Carroll's estimate that the "incident" had occurred at 1:48 and lasted for two minutes simply isn't reflective of the totality of the evidence. Further, the phone call summary *was* admitted into evidence and was provided to the jury for deliberations; thus, it is not newly presented. (State's Lodging A-7, list of admitted exhibits; C-2, p. 125.)

Petitioner's actual innocence claim also relies upon the victim's testimony that Petitioner *picked her up* and that she weighed between 80 to 90 pounds (State's Lodging A-7, pp. 66-67), because Petitioner contends he was physically unable to do so. Petitioner asserts that, had a medical expert been called on his behalf, such testimony would have proven that Petitioner could not have committed the crime.

In this regard, Petitioner says that on April 19, 2005, a piece of sheet metal fell on Petitioner's arm and sliced several of his tendons and an artery, requiring emergency surgery. He was arrested on June 20, 2005, which was 63 days later. (State's Lodging E-2, p. 16.)  In an Affidavit offered by Petitioner after trial, Allan Goodall, a physical therapist, opined: "These type of injuries usually will take 60 to 90 days and up to a full year to sufficiently heal before being close to being 100%." (Dkt. 1-3, p. 2.) However,

this statement highlights the variability of human healing, which is problematic for Petitioner's actual innocence argument. The crime occurred at day 63, meaning that Petitioner was three days into the low end of the time period Mr. Goodall considered "healed," and thus it was not impossible that Petitioner could have committed the crime in the manner described by the witnesses. Regardless, a physical therapist who was not at the scene would have no actual knowledge of whether Petitioner actually grabbed, dragged, or picked up the girl, but could offer only general, speculative testimony not narrowed to the particular date and incident. The Court disagrees with Petitioner that the testimony of a medical expert witness would have exonerated him, given the facts in the record.

Petitioner also asserts that he is actually innocent because he passed a polygraph test. However, polygraph evidence is not the type of "reliable" or "exculpatory" evidence that meets the *Schlup* standard. *See, e.g., United States v. Cordoba*, 104 F.3d 225, 227–28 (9th Cir. 1997) (noting the "inherent problematic nature" of polygraphs); *Hatch v. Lambert*, 2006 WL 3825230, *1 (9th Cir. Nov. 15, 2006) (unpublished) ("When the general unreliability of polygraph evidence is viewed in combination with the other evidence at trial, including [petitioner's] experience in taking polygraph tests and the witness testimony, we cannot conclude that 'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" (quoting *Schlup*, 513 U.S. at 329); *Knickerbocker v. Wolfenbarger*, 2007 WL 29190 (6th Cir. Jan 5, 2007) (unpublished) ("[Petitioner's] polygraph evidence is not persuasive evidence of actual innocence. Polygraph results themselves are generally inadmissible as unreliable."); *Cortes v. Mills*,

2011 WL 6965804, at *5–6 (D. Or. July 18, 2011), *report and recommendation adopted*,
2012 WL 32444 (D. Or. Jan. 4, 2012) (unpublished) (same).

Based on all of the foregoing, the Court concludes that Petitioner has not met his
burden of demonstrating that, in light of all the evidence, including evidence not
introduced at trial, it is more likely than not that no reasonable juror would have found
him guilty beyond a reasonable doubt. Therefore, the miscarriage of justice exception
does not apply to excuse the timeliness of Petitioner's claims.

## CONCLUSION

The Court is not persuaded by Respondent's statute of limitations argument and
concludes that the Petition was timely filed. Claims 1(A), 1(F), and 1(J) are summarily
denied for lack of merit. The Court agrees that all of Petitioner's claims are procedurally
defaulted, with the exception of Claims 1(L) and 1(M), and that Petitioner has not shown
cause and prejudice or a miscarriage of justice to excuse the default of the claims. The
Court will permit Petitioner to make a *Martinez* argument for his defaulted ineffective
assistance of trial counsel claims, if he desires. Respondent's Motion for Summary
Dismissal will be denied in part and granted in part. Petitioner may proceed to the merits
of only Claims 1(L) and 1(M).

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 13) is GRANTED in part and
   DENIED in part. Petitioner may proceed to the merits of only Claims 1(L) and
   1(M).

**MEMORANDUM DECISION AND ORDER - 31**

2. Petitioner may file a motion for application of *Martinez v. Ryan* no later than 60 days after entry of this Order, as described above.

3. Respondent shall file an answer to the remaining claims within 90 days after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served within 30 days after service of the answer. Respondent has the option of filing a sur reply within 14 days after service of the reply. At that point, the case shall be deemed ready for a final decision.

4. No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

5. No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

DATED:  March 21, 2017

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge