UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DANIEL LEE DIXON,

                Petitioner,

vs.

KEITH YORDY,

                Respondent.

Case No. 1:14-cv-00551-REB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Petitioner Daniel Lee Dixon's federal Petition for Writ of Habeas Corpus. The merits of Claims 1(L) and 1(M) are now ripe for adjudication, as are Petitioner's Motion for Application for *Martinez v. Ryan* (Dkt. 18), and Respondent's three Motions for Extension of Time. (Dkts. 19, 21, 22.)

All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 8.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having completed a careful review of the record, and having considered the arguments of the parties, the Court enters the following Order.

## BACKGROUND

In 2006, Dixon was convicted of lewd conduct with a minor under sixteen, first degree kidnapping, misdemeanor possession of drug paraphernalia, and misdemeanor malicious injury to property, after a jury trial in the First Judicial District Court in

Kootenai County, Idaho. The incident occurred at a Coeur d'Alene beach park. Petitioner was accused of grabbing and restraining a twelve-year-old girl, placing her on his lap, and touching her vagina. Petitioner has always contended that he is actually innocent.

Petitioner's judgment of conviction was entered on July 19, 2006. After his conviction, Petitioner filed a direct appeal and three state post-conviction actions, none of which provided relief on his convictions or sentences.

Petitioner brings the following claims in his federal Petition for Writ of Habeas Corpus:

Claim 1 is a Sixth Amendment ineffective assistance of trial counsel claim, consisting of the following subparts:

A. failure to file a notice of appeal, despite Petitioner's specific request;

B. failure to call witnesses including: (1) Megan Griffitts, (2) the owner of Funtastic Foods, (3), Reuben Rodriguez, (4) Russell Giles, and (5) six employees of Diamond Parking and the City Park (Brian, Curtis, Jake, Heather, Tag, and Marie);

C. (i) failure to request a second evidentiary hearing after the first one was cancelled in February 2006, and (ii) failure to have Petitioner's clothing and telephone records admitted as evidence at trial;

D. failure to use a recorded interview to impeach witness Karisma Cronkite;

E. failure to poll the jury after the guilty verdict;

F. failure to inform Petitioner of his right to file an appeal;

G. wrongly informing Petitioner that he had no Fifth Amendment right to refuse to take a psychosexual evaluation;

H. failure to file a motion for change of venue;

I. failure to object to the prosecutor vouching for the credibility of two witnesses during closing argument;

J. failure to file a post-conviction appeal (post-conviction counsel);

K. (i) failure to have Petitioner's clothing examined for DNA evidence; (ii) failure to have his clothing submitted to the jury, so they could see the clothing did not fit the description of the witnesses (duplicative of (C)(ii) above);

L. failure to request a change of location from the jail building to a regular court room;

M. failure to have his medical records and arm examined by an expert to show that he had an injury so severe that it was a factual impossibility for him to have committed the crime; and

N. failure to spend adequate time to effectively represent Petitioner, including failure to prepare for trial, and failure to prepare Petitioner for his testimony at trial.

Claim 2 is that Petitioner was denied the right to a fair trial when the trial court refused to allow Petitioner to call witnesses during trial. Claim 3 is that he was denied the right to a fair trial when the prosecutor refused to give Petitioner exculpatory evidence. Claim 4 is denial of the right to a fair trial under a cumulative error theory.

Earlier in this matter, the Court denied Claims 1(A), 1(F), and 1(J) on the merits. [1] (Dkt. 17.) The Court also granted Respondent's Motion for Summary Dismissal on procedural default grounds on Claims 1(B), 1(C), 1(D), 1(E), 1(G), 1(H), 1(I), 1(K), 1(N), 2, 3, and 4. Petitioner was permitted to make a *Martinez v. Ryan* cause and prejudice argument to excuse the procedural default of the ineffective assistance of trial counsel claims only, which are Claims 1(B), 1(C), 1(D), 1(E), 1(G), 1(H), 1(I), 1(K), and 1(N). Petitioner has filed his briefing (Dkt. 18), which the Court addresses below.

---

[1]       Claim 1(A), (F), and (J) were summarily denied as having no factual and/or legal basis: Petitioner *did* file a timely notice of appeal in the direct appeal action, which was pursued to completion. Where Petitioner is referring to his post-conviction counsel's failure to file a notice of appeal in the post-conviction action, the claim has no legal basis: errors in post-conviction review are not cognizable federal habeas corpus claims. In any event, Petitioner's post-conviction appeal rights were restored, and he completed an appeal.

The Court permitted Petitioner to proceed to the merits of Claims 1(L) and 1(M). (Dkt. 17.) Respondent has filed an Answer and Brief in Support of Dismissal of the Petition (Dkt. 24), and Petitioner has elected not to file a Reply.

## CONSIDERATION OF MERITS OF CLAIMS 1(L) and 1(M)

### 1. Standard of Law

Federal habeas corpus petitions that challenge a state court judgment are governed by the strict requirements of Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The source of clearly established federal law must come only from the holdings of the United States Supreme Court. However, circuit court precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime*, 200 F.3d at 600-01.

*Strickland v. Washington*, 466 U.S. 668, 689 (1984), is clearly-established law governing ineffective assistance of counsel claims, and the Supreme Court in *Strickland* made clear that judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). There is a strong

presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id*. To prevail on a claim for ineffective assistance of counsel, the petitioner must show that (1) the attorney's performance was unreasonable under prevailing professional standards, and (2) a reasonable probability that but for counsel's poor performance, the results would have been different. *Id*. at 687–94. *Strickland* defines reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id*.

Additionally, the Supreme Court has cautioned that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (*Richter*).

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel case. *Strickland*, 466 U.S. at 697. On habeas review, the

court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decision-making, is the "de novo" standard of review that a state court applies. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to federal district courts reviewing *Strickland* claims in habeas corpus actions, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101.

That is, when evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d), the Court's review of that claim is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

## 2. Discussion of Claim 1(L)

Claim 1(L) is that trial counsel was ineffective under the Sixth Amendment for failing to assert that holding the trial in the jail courtroom violated Petitioner's Sixth and Fourteenth Amendment rights to a fair trial. The trial location was described as follows:

> Dixon's trial was held in a courtroom in the Kootenai County Public Safety Building (safety building), the building that also houses the county jail. The safety building is a concrete building surrounded by tall fences and razor wire. Jurors enter the building through heavily-tinted doors and enter the courtroom by passing through a security booth protected by thick bulletproof glass. To get through security, the jurors must speak to jail staff through an intercom. Inside the courtroom, the jury box is shielded on the left by thick glass, which is presumably to protect the jury from inmates entering the courtroom from the side entrance. The safety building is located roughly three miles away from the majority of the other courtrooms utilized by the county.

(State's Lodging G-15, p. 1.)

In rejecting this claim in Petitioner's state post-conviction proceedings, the state district court noted that it was aware of no other defense attorneys who had objected to holding criminal trials in the safety building. In addition, Petitioner's counsel had never objected to holding a criminal trial there. The state district court concluded that the failure to object to the trial location was not objectively unreasonable, because in 2006 the law was not sufficiently clear to have put trial counsel on notice that an objection should have been made.

In the state courts, Petitioner brought forward four prior cases from different state courts holding that defendants' rights to an impartial trial were violated when their trials were held in *prison*. The Idaho Court of Appeals distinguished these cases by stating that

Petitioner's case was held in *a jail*, not a prison. In addition, the Idaho Court of Appeals

noted that the main case Petitioner cited that disallowed a criminal trial in a *jail* was

published four years *after* Petitioner's 2006 trial—*State of Washington v. Jaime*, 233 P.3d

554 (Wash. 2010).

> The Idaho Court of Appeals concluded:

> Given the state of the law at the time of Dixon's conviction,
> with no Idaho precedent or other case law dealing with
> holding a trial within a jail, we cannot say it is objectively
> unreasonable for an attorney to have failed to object….
> Because we hold that Dixon failed to show that his trial
> counsel provided deficient representation, we need not
> address whether Dixon suffered prejudice.

(State's Lodging G-15, p. 3.)[2]

The Idaho Court of Appeals recognized and applied *Strickland v. Washington*.

This Court must analyze whether—under the doubly-deferential habeas corpus standard

defined by *Harrington v. Richter*—the Idaho Court of Appeals' decision was an

unreasonable determination of the ineffective assistance claim on the facts of Petitioner's

case. *See Williams*, 529 U.S. at 407. "Section 2254(d)(1) provides a remedy for instances

in which a state court unreasonably *applies* [Supreme Court] precedent; it does not

---

[2]     The Idaho Court of Appeals acknowledged:

> Dixon correctly points out that a common practice of unconstitutional behavior
> does not make that practice objectively reasonable. However, the significance of
> no other attorneys objecting supports that at the time of Dixon's trial, the law
> was not sufficient established to demonstrate that an attorney was deficient for
> failing to object to holding the trial in the safety building.

(State's Lodging G-15, p. 3, n.3.)

**MEMORANDUM DECISION AND ORDER - 8**

require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

There is no United States Supreme Court precedent expressly holding that a defense lawyer was ineffective for failing to object to a trial setting in a jail courtroom. Nevertheless, because ineffective assistance involves a case-specific analysis, if Petitioner shows that the two prongs of *Strickland* are clearly met under the guidance provided in that case, habeas corpus relief is available to him. *See Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (discussing that no new ineffective assistance law was made in *Williams v. Taylor*, 529 U.S. 362 (2000), because it was squarely governed by the holding in *Strickland*). However, the first part of the Court's analysis is not to examine *Strickland*, but to review the substantive law available to trial counsel in 2006 that would have informed the reasonableness of her decision about Sixth and Fourteenth Amendment fair trial practices. The United States Supreme Court has not addressed whether holding a criminal trial in a jail violates a defendant's right to a fair trial.

In *Estelle v. Williams*, 425 U.S. 501 (1976) (*Williams*), the Supreme Court addressed the issue of defendants who are compelled to wear prison attire to stand trial on criminal charges. The Court observed:

> "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481, 491 (1895).
>
> To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process.

> In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970).

425 U.S. at 503.

The *Williams* Court held that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Id.*, at 512. However, the Court also clarified that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." 425 U.S. at 512-13.

Ten years later, in *Holbrook v. Flynn*, 475 U.S. 560 (1986) (*Flynn*), the Supreme Court rejected a claim that four troopers sitting quietly during trial in the front row of the courtroom to guard five defendants who had been denied bail was so inherently prejudicial that it denied Defendant Holbrook his constitutional right to a fair trial. *Id.* at 572. In its analysis, the Court identified shackling and prison clothes as "unmistakable indications of the need to separate a defendant from the community at large," but observed that "the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable." *Id.* at 569.

Petitioner argues that trial counsel should have been on notice from the Supreme Court's decision in *Flynn* that holding a criminal trial in jail violates Petitioner's right to a fair trial. Respondent disagrees, arguing that *Flynn* considered *only* whether the presence of multiple officers in an ordinary courtroom deprived the defendant of his

constitutional right to a fair trial—it had nothing to do with a *jailhouse* courtroom. Of course, disagreements over whether extensions of the law were clear or murky in 2006 is exactly the issue at hand.

In the 2010 Washington Supreme Court case that Petitioner relied on in his state post-conviction case, *State v. Jaime*, the justices likewise had competing opinions. A majority of the Washington Supreme Court decided:

> [U]nder the analysis of [*Flynn*], holding a trial in a jail courtroom is inherently prejudicial for two reasons. First, the setting is not in a courthouse, a public building whose purpose is to provide a neutral place to conduct the business of the law. Second, the setting that replaces the courthouse has a purpose and function that is decidedly not neutral, routine, or commonplace. Holding a criminal trial in a jailhouse building involves such a probability of prejudice that we must conclude it is "'inherently lacking in due process.'" [*Flynn*], 475 U.S. at 570, 106 S.Ct. 1340 (quoting *Estes [v. Texas]*, 381 U.S. [532], 542–43, 85 S.Ct. 1628 [1965]).

233 P.3d at 557.

On the other hand, the dissenting opinion in *Jaime* reasoned:

> To reach today's holding, the majority first relies on cases involving shackles and prison garb. While there is no doubt that it is inherently prejudicial to shackle a defendant during trial, *State v. Finch*, 137 Wash.2d 792, 844, 846, 975 P.2d 967 (1999), or force a defendant to wear prison garb during trial, *Estelle v. Williams*, 425 U.S. 501, 502, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), conducting a trial in a permanent courtroom in the jail building does not raise the same constitutional concerns. Shackling can be of such a physical restraint as to deprive a defendant of the right to appear and defend himself or herself. *State v. Williams*, 18 Wash. 47, 51, 50 P. 580 (1897); 562 Wash. Const. art. I, § 22. *873 Shackling is also a very visible restraint that indicates to the jury the defendant is so dangerous as to not be trusted even by

the judge. *Finch*, 137 Wash.2d at 845, 975 P.2d 967.
Similarly, a defendant who is forced to wear prison garb is
distinctly marked as a dangerous or guilty person. *See Estelle*,
425 U.S. at 504–05, 96 S.Ct. 1691.

But Jaime's entitlement "to the physical indicia of innocence"
is limited; it confers the "right of the defendant to be brought
before the court with the appearance, dignity, and self-respect
of a free and innocent man," not to choose a particular
courtroom. *Finch*, 137 Wash.2d at 844, 975 P.2d 967. A
courtroom is a location, not an accoutrement. Because a
courtroom does not serve as an identifier, it does not possess
the inherently prejudicial power of a shackle or a prison
uniform. While some aspects of a court setting may cause
prejudice in certain cases, there simply is no basis to conclude
that the practice of conducting trials in a jail building
courtroom is always and inherently prejudicial.

233 P.3d at 561–62 (Fairhurst, J. (dissenting)).

This illustration of differing opinions on the issue at hand leads into the Court's

next point of analysis, which is whether, under the *Strickland* standard, trial counsel acted

unreasonably in failing to identify the jail location issue. Because this issue has not been

squarely addressed by the United States Supreme Court, this Court first reviews cases in

another similar area—the "cause and prejudice" analysis in habeas corpus procedural

default.

The United States Supreme Court addressed the issue of "novelty" of a

constitutional claim in *Engle v. Isaac*, 456 U.S. 107 (1982),[3] when it considered whether

the novelty of an issue functioned as an excuse or "cause" in a "cause and prejudice"

procedural default analysis. The Supreme Court reasoned that a claim cannot be

---

[3]  *Engle* was overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995) (addressing
Ohio's contemporaneous objection rule).

considered novel where it was "perceived and litigated" by other defense counsel at the time. *Id*. at 132–33 and n.41. Revisiting the issue in 1984 in *Reed v. Ross*, the Supreme Court held that a petitioner established "cause" for a procedurally-defaulted claim where the constitutional claim is so novel that its legal basis is" not reasonably available to counsel." 468 U.S. 1, 16 (1984).

The Court next surveys circuit precedent for cases involving ineffective assistance of counsel claims focused on novel legal issues. *See Duhaime*, 200 F.3d at 00-01. The Eighth Circuit has reasoned that, when an issue was "overlooked by several extremely competent folks, starting with the probation officer …. and ending with the district court," the oversight "bolsters the conclusion that there was no actionable Sixth Amendment violation." *Pierce v. United States*, 686 F.3d 529, 534 (8th Cir. 2012). In *Pierce*, no ineffectiveness was found where there was a "paucity of case law describing th[e] precise situation," and "a myriad of others [had] missed the same point." *Id*. The Seventh Circuit has held that a defense lawyer is "not ineffective for failing to anticipate a novel argument, even if a more clever lawyer might have spotted it on the horizon." *United States v. Rezin*, 322 F.3d 443, 446–47 (7th Cir. 2003), *overruled on other grounds by Lockhart v. United States*, 136 S.Ct. 958 (2016).

The Eleventh Circuit has determined that, although "[i]gnorance of well-defined legal principles is nearly inexcusable," "the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized." *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) (internal quotations omitted). *Cf. United States v. Jones*, 918 F.2d 9, 11 (2d Cir. 1990) (holding that an ineffective assistance of

counsel claim has no merit when, at the time of trial, the question of whether conspiracy could serve as a predicate act was an unsettled question of law); *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981) (concluding that "counsel is normally not expected to foresee future new developments in the law").

In *Anderson v. United States*, 393 F.3d 749 (8th Cir. 2005), the Court explained why an attorney who failed to catch the wave ahead of a new development in the law was not ineffective:

> Under the facts alleged by Anderson, we cannot conclude that his counsel's performance on direct appeal was constitutionally deficient. Specifically, we cannot say that counsel's failure to assert the argument that *Apprendi* invalidated Anderson's previous guilty plea was so egregious as to have deprived Anderson of his Sixth Amendment right to counsel. While the argument, in hindsight, may have had merit, it was a wholly novel claim at the time. *Apprendi* had not been decided when Anderson's opening appellate brief was filed and, although *Apprendi* was issued shortly before Anderson's reply brief was due, no published opinion in our Circuit (nor any other circuit) addressed *Apprendi*'s effect on previously entered guilty pleas. Counsel's failure to raise this novel argument does not render his performance constitutionally ineffective. While the Constitution guarantees criminal defendants a competent attorney, it "does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

*Id*. at 754.

Surveying the Idaho legal landscape in 2006, this Court finds nothing contrary to the Idaho courts' conclusions that Idaho attorneys were not objecting to holding criminal trials at the jail. Nothing in the record suggests that Idaho attorneys recognized the issue and regularly objected in 2006. Rather, the record shows the opposite: no one had

objected and Petitioner's lawyer had never thought to object on grounds that holding a criminal trial at the jail was so inherently prejudicial that it deprived her clients of a fair trial.

In today's world, this Courts finds the general practice of holding a criminal trial in a heavily-secured jail courtroom troubling in theory, but each decision about whether a court practice is "inherently prejudicial" must be viewed under the particular facts of a case. Pertinent here is the fact that nothing in the record shows whether, twelve years ago when criminal trials were regularly held in the Kootenai County Jail courtroom, there was an essential state or county policy or issue necessitating its use.

The dearth of case law on this particular topic at the time of Petitioner's trial leads this Court to conclude that Petitioner's trial counsel did *not* act unreasonably or deficiently in failing to object to the jail location on fairness grounds. The Sixth Amendment guarantees the right to adequate counsel, not the best counsel.

Even if this Court were to conclude in its independent judgment that the state court's decision on the performance prong of *Strickland* is incorrect or wrong, habeas corpus relief is not warranted *unless* (1) the state court's application of *Strickland* was not merely erroneous but also objectively unreasonable, *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003), *and* (2) the prejudice prong of *Strickland* is met. If fairminded jurists could disagree on the correctness of the state court's decision, relief is not warranted under § 2254(d)(1). *Richter*, 562 U.S. at 101. The bar is a high one, as "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

Here, because no one in Idaho had objected to the jail courtroom location at the time of Petitioner's trial and no Idaho appellate court or United States Supreme Court precedent existed to require an objection, fairminded jurists could disagree about whether Petitioner's counsel should have argued that existing case law should have been extended to cover Petitioner's jailhouse court proceeding.

Fairminded jurists could also disagree about whether prejudice resulted from the omission. Reviewing the prejudice prong, the Court agrees with the state district court that there was neither deficient performance nor prejudice to Petitioner's defense from the failure to object because Petitioner "voluntarily, and against his counsel's advice, informed the jury that he was incarcerated." (State's Lodging C-1, p. 90.) Petitioner's counsel testified at the post-conviction hearing: "Mr. Dixon was very specific that he wanted the jury to know the conditions under which he was being held, how long he was incarcerated, and how he was being treated." (*Id.*) Therefore, Petitioner himself injected the element of incarceration into jurors' minds by his own choice; a denied objection to hold the trial elsewhere would not have provided the jurors with new information that Petitioner was incarcerated as a pretrial detainee.

For all of the foregoing reasons, the Court concludes that habeas corpus relief on Claim 1(L) is not warranted for the failure to show either deficient performance or prejudice under the doubly-deferential federal habeas corpus standard.

### 3. Discussion of Claim 1(M)

Claim 1(M) is that trial counsel was ineffective for failing to have his medical records and his arm examined by an expert to show that he had an injury so severe that it was a factual impossibility for him to have committed the crime as alleged. Petitioner is referring to the victim's testimony that Petitioner *picked her up* and that she weighed between 80 to 90 pounds (State's Lodging A-7, pp. 66-67); he asserts he was physically unable to do so. Petitioner asserts that, had a medical expert been called on his behalf, such testimony would have proven that Petitioner could not have committed the crime.

The Idaho Court of Appeals affirmed the state district court's dismissal of this claim, determining that Petitioner did not meet either prong of *Strickland*. (State's Lodging G-15, p. 4.) First, the Court of Appeals pointed to the fact that Petitioner had never brought forward admissible expert testimony to establish exactly what a medical expert would have testified to at Petitioner's trial. In addition, the post-conviction evidentiary hearing established that it was Petitioner's choice not to delay the trial to allow his counsel to procure a medical expert because Petitioner wanted to be released from jail as soon as possible. (State's Lodging E-2, pp. 101-105, 124-128.)

To attempt to cure the lack of expert testimony ten months after the post-conviction order of dismissal, Petitioner filed a Rule 60(b)(6) motion to modify the post-conviction judgment, to which was attached an affidavit containing the opinion of Allan Goodall, a physical therapist. The Idaho Court of Appeals refused to consider the affidavit because Petitioner did not show unique and compelling circumstances that

would permit him to use a Rule 60(b) motion to supplement the evidence his counsel presented at the post-conviction evidentiary hearing.

Even considering the affidavit, the Court still comes to the same conclusion as when it considered it for Petitioner's claim that he is actually innocent of the crime because he was physically unable to commit the crime as a result of his injury. (Dkt. 17.) The affidavit highlights the variability of human healing—which does *not* support Petitioner's claim. Mr. Goodall opined: "These type of injuries usually will take 60 to 90 days and up to a full year to sufficiently heal before being close to being 100%." (Dkt. 1-3, p. 2.)

Petitioner had emergency surgery for an injury that occurred on April 19, 2005, when a piece of sheet metal fell on his arm and sliced several of his tendons and an artery. Petitioner was arrested on June 20, 2005, which was 63 days after his surgery. (State's Lodging E-2, p. 16.) According to Mr. Goodall's opinion, Petitioner was three days into the low end of the time period Mr. Goodall considered "healed," and thus it *was* possible that Petitioner could have committed the crime in the manner described by the witnesses. Regardless, a physical therapist who was not at the scene would have no actual knowledge of whether Petitioner actually grabbed or picked up the girl, but could offer only general, speculative testimony not narrowed to the particular date and incident.

Petitioner has not explained how his counsel was ineffective for complying with his desires to go to trial quickly, before counsel could retain an expert witness. The only expert witness testimony that Petitioner offers is equivocal, at best, in aiding his case. Further, there was ample eyewitness testimony to discredit any speculative expert witness

testimony on whether or not Petitioner could have picked the girl up at that point in time. The fact that the expert witness was not a treating physician and had not examined Petitioner during the course of his injury and healing likely would have led the jury to conclude that the testimony was speculative.

This Court concludes that Petitioner has not shown that his trial counsel was ineffective for failing to bring forward expert testimony in the face of Petitioner's desires to go to trial so quickly that there was insufficient time to hire an expert. In addition, the Court concludes that the affidavit of the physical therapist that Petitioner submitted with his Rule 60(b) motion does not establish prejudice because it is speculative and actually suggests that Petitioner could have been healed enough to lift the girl. Furthermore, eyewitness testimony would have corroborated the possibility that Petitioner could have picked up the girl at the 63-day mark in his healing process.

Because this is federal habeas review, an additional layer of deference must be accorded to the Idaho Court of Appeals' decision. Because reasonable jurists could disagree with the conclusion of the Idaho Court of Appeals that Petitioner failed to meet the *Strickland* standard, Claim 1(M) is subject to denial on the merits.

## DISCUSSION OF PETITIONER'S *MARTINEZ V. RYAN* MOTION

### 1. Standard of Law

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A procedurally defaulted claim will not be heard in federal court unless the

petitioner shows that there was legitimate cause for the default and that prejudice resulted from the default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the United States Supreme Court held that inadequate assistance of post-conviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. To show ineffective assistance of PCR counsel, Petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Id*. at 14. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id*.; *see Strickland*, 466 U.S. at 695-96.

The *Martinez v. Ryan* exception applies only to defaulted claims of ineffective assistance of trial counsel; it has not been extended to other types of claims. *See Davila v. Davis*, 137 S. Ct. 2058 (2017) (holding that *Martinez* is not applicable to claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (holding that *Martinez* is not applicable to a defaulted *Brady* claim).

In addition, *Martinez* does not apply to post-conviction appeals, only initial post-conviction proceedings. Therefore, any claims that *were* included in the original petition but were not included in the post-conviction appeal are defaulted because of appellate counsel's decision to not include them in the appeal, rather than any fault of the attorney who handled the initial post-conviction matter in the state district court.

As to any ineffective assistance claims that were *not* brought in the original post-conviction action, Petitioner must show that lack of an attorney or the ineffectiveness of his attorney on post-conviction review caused the default of the claims. Ineffectiveness mean that post-conviction counsel performed deficiently, and the omissions were not simply the result of the strategic selection of issues for post-conviction review.

In addition, Petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Martinez*, 566 U.S. at 14. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id.*; *see Strickland*, 466 U.S. at 695-96.

## 2. Discussion

Petitioner has requested an evidentiary hearing on the *Martinez* issue, but, for the reasons that follow, the request will be denied. Petitioner does not address the reason for the default of each claim, but persists in arguing that the claims are not defaulted. Neither does Petitioner address the substantiality of each or any claim, but vaguely asserts: "The claims are clear and are found to be substantial." (Dkt., p. 6.) He points the Court back to his memorandum of law in support of his habeas petition and his motion to re-open the case, where he asserts he "has thoroughly explained his claims of ineffective assistance of counsel." (*Id.*) Therefore, the Court has reviewed the documents to which Petitioner has referred, and the Court has reviewed the entire record, as well.

Respondent argues that *Martinez* does not apply to Petitioner's case, because he has failed to show that the ineffectiveness of his post-conviction counsel *caused* the default of any of his claims of trial counsel ineffectiveness. (Dkt. 23, pp. 2-3.) Petitioner presented his claims to the state district court in the post-conviction petition; however, the claims were not presented on appeal of denial of the post-conviction petition. The Court agrees that it was *post-conviction* appellate counsel's decision, not counsel in the *initial* post-conviction action, that led to default of the claims. Post-conviction appellate counsel's decisionmaking is beyond the scope of *Martinez*.

Accordingly, Petitioner cannot rely on that exception to excuse the default of his claims, and no other adequate excuse for their default is apparent from the Court's review of the record. Because the fact of lack of causation is clear from the record, no evidentiary hearing is required. Therefore, these claims will be dismissed with prejudice on the record currently before the Court.

## CONCLUSION

The Court concludes that Petitioner has not met the standard for habeas corpus relief for Claims 1(L) and 1(M). These claims are subject to denial and dismissal with prejudice. The Court cannot hear the procedurally defaulted claims for Petitioner's failure to show cause in the cause and prejudice exception analysis. Accordingly, this entire action will be dismissed with prejudice.

# ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Application of *Martinez v. Ryan* (Dkt. 18) is GRANTED to the extent that the Court has considered Petitioner's arguments; it is DENIED to the extent that the Court concludes that the *Martinez v. Ryan* exception does not apply and that no evidentiary hearing is required.

2. Respondent's Motions for Extension of Time (Dkts. 19, 21, 22) are GRANTED.

3. The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED and DISMISSED with prejudice.

4. The Court finds that the decisions resolving Petitioner's claims are not reasonably debatable, and, therefore the Court declines to grant a certificate of appealability over either the procedural or substantive rulings in this case. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases.

5. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  March 28, 2018

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge